**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **TOMMY M. SPIKES,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 7:03-CV-0125-BH |
| v. | § | |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| | § | |
| Defendant. | § | Consent Case |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the provisions of Title 28, United States Code, Section 636(c), and an Order of the Court in implementation thereof, subject cause has been transferred to the undersigned United States Magistrate Judge. Before the Court are *Brief for Plaintiff*, filed December 9, 2003, and *Defendant's Motion for Summary Judgment*, filed February 12, 2004. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned finds that the decision of the Commissioner should be **AFFIRMED**.

**I.   BACKGROUND**[1]

*A.   Procedural History*

Tommy Spikes ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act. On January 16, 2001, Plaintiff protectively filed an application for disability benefits under Title II, seeking benefits from January 8, 2001. (Tr. at 50-53.) Plaintiff claimed he was disabled due to rheumatoid arthritis and lower back problems. (Tr. at 66.) Plaintiff's

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

application was denied initially and upon reconsideration. (Tr. at 25-29, 32-35.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 36.) A hearing, at which Plaintiff personally appeared and testified, was held on July 15, 2002. (Tr. at 153-76). On January 31, 2003, the ALJ issued her decision finding Plaintiff not disabled. (Tr. at 7-19.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 3-4.) Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.     *Factual History***

    1.     Age, Education, and Work Experience

Plaintiff was born on November 27, 1945. (Tr. at 156.) He graduated high school. *Id*. His past relevant work experience includes employment as a used car salesperson, door-to-door sales representative, and sales representative. (Tr. at 172-73.)

    2.     Medical Evidence

Plaintiff initially sought treatment for lower back pain at Brown Chiropractic on June 18, 1990. (Tr. at 117.) He complained of difficulty straightening in the mornings and after driving long distances. *Id*. Plaintiff returned to the clinic infrequently until July 1999, when he was seen six times for back pain. (Tr. at 101-106.) He returned for treatment on September 2, 1999, and on November 19, 1999. (Tr. at 100.)

On September 19, 2000, Plaintiff was seen by Mihaela Anastase, M.D. for left leg pain and left lower back pain. (Tr. at 131.) Plaintiff had no history of injury to the area. *Id.* Dr. Anastase noted tenderness over the left lower back and sciatica point tenderness. *Id.* Plaintiff elected not to have further testing at that time. *Id.* He was prescribed Celebrex, Medrol Dospak and Skelaxin.

*Id.* The record contains no other evidence of treatment for Plaintiff's back problems.

On April 17, 2001, Plaintiff was evaluated by Elena Dembo-Smeaton, M.D., a consultative examiner. (Tr. at 124-26.) Plaintiff reported that he suffered back and joint pain, beginning five years previously. (Tr. at 124.) He stated that the pain was aggravated by movement. *Id.* He reported obtaining partial relief with rest and anti-inflammatory medications. *Id.* Plaintiff told Dr. Dembo-Smeaton that "the pain and stiffness of his joints limit his daily activities, makes it hard for [Plaintiff] to move about, drive the car, or lift and handle objects." *Id.* Examination of Plaintiff's spine showed that his cervical spine exhibited no tenderness to palpation. (Tr. at 125.) He was able to flex his neck to 40 degrees, extend to 45 degrees, and right and left lateral flexion was 30 degrees. *Id.* No tenderness or spasm was noted at the thoracic spine. *Id.* Palpation of Plaintiff's lumbar spine revealed tenderness. *Id.* Additionally, Dr. Dembo-Smeaton noted spasm of the paraspinous muscles on the right side of the lumbar spine. *Id.* Plaintiff was able to bend forward 60 degrees, extend back 20 degrees, bend right and left laterally 20 degrees, and rotate 20 degrees. *Id.* A straight leg-raising test was positive at 35 degrees bilaterally. *Id.* Plaintiff's posture was erect and his muscle strength was equal bilaterally. (Tr. at 126.) His deep tendon reflexes were diminished and 1+ in all extremities. *Id.* There was no evidence of muscle atrophy. Plaintiff's gait was coordinated, although tandem gait was difficult for him to perform. *Id.* He was negative for Romberg's sign. *Id.* X-rays of the lumbosacral spine showed degenerative changes in T10, T11 with prominent osteophytes. *Id.* Laboratory tests showed Plaintiff's rheumatoid factor to be less than twenty, and his erythrocyte sedimentation rate was six mm/hr. *Id.*

Dr. Dembo-Smeaton assessed Plaintiff as having chronic back pain, rhumatoid arthritis by history, and hyperlipidemia by history. *Id.* Her conclusion, which was based on the objective

evidence and on Plaintiff's reported history, was that Plaintiff was limited in his ability to work. *Id.* Dr. Dembo-Smeaton stated that "[h]e cannot move about, drive a car, lift, carry or handle objects, and he cannot do fine movements with his hands because of the pain and stiffness. [Plaintiff] can sit and stand only for a limited time, about 30 minutes." *Id.*

      3.      <u>Hearing Testimony</u>

At the hearing on July 15, 2002, the ALJ heard testimony from Plaintiff and Clifton A. King, Vocational Expert ("VE"). (Tr. at 153-76.) Plaintiff was represented by counsel at the hearing. (Tr. at 153.)

Plaintiff testified that he completed high school. (Tr. at 156.) Plaintiff last worked in July 1999, as a door-to-door salesperson. (Tr. at 157.) He stopped working when he became unable to lift products out of the car or drive long distances. *Id.*

Plaintiff stated that he did some household chores, prepared meals, and did some shopping. (Tr. at 162.) He had been unable to perform any yard work for two years. *Id.* He was able to drive, but only around town. (Tr. at 163.) He stopped building model railroads three years previously due to his impairments. *Id.* Plaintiff was able to take care of his personal hygiene. (Tr. at 170.)

Plaintiff testified that Dr. Anastase was his only physician. (Tr. at 164.) Plaintiff went to the doctor "only when I have to." *Id.* He complained of pain in his lower back, between the shoulders, and across his neck. (Tr. at 166.) The pain was not constant, but occurred primarily when he was not taking anti-inflammatory medication. *Id.* He was unable to take the medication all the time because it affected his ability to sleep. *Id.*

Plaintiff believed he would be unable to work as a car salesperson because the job required a great deal of walking and standing, and he was unsure whether his ankles and knees would hold

up. (Tr. at 165.) He also believed he could not perform the work of telephone sales because sitting for long periods of time hurt his back. (Tr. at 166.) Plaintiff stated that he believed he could stand and walk two hours in an eight hour day. (Tr. at 167.) He experienced swelling of his lower legs and numbness in his hands and feet in the evenings. (Tr. at 168.) He stated that his hand suffered cramps when writing. (Tr. at 169.)

The VE was asked to respond to a hypothetical question which assumed an individual of Plaintiff's age, education, and work experience, who was capable of lifting or carrying 30 pounds on an occasional basis, 15 pounds on a frequent basis, was able to stoop, crouch, and kneel on an occasional basis. (Tr. at 173-74.) The VE opined that such an individual could perform Plaintiff's past work as it was customarily performed in the general economy. (Tr. at 174.)

### C.     *ALJ's Findings*

The ALJ issued his decision denying benefits on January 31, 2003. (Tr. at 7-19). The ALJ noted that Plaintiff was insured for Title II benefits through December 31, 2002, and was required to establish disability on or prior to that date. (Tr. at 10.) In his findings, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his symptoms. (Tr. at 11.) Plaintiff was found to have chronic back pain and some arthritic type pain, as well as high cholesterol and triglycerides and periodic rhinitis which were, in combination, severe impairments. (Tr. at 12.) However, the ALJ concluded that none of Plaintiff's impairments met or equaled the criteria of any of the listed impairments. *Id.*

The ALJ noted that there was no evidence in the record that Plaintiff was ever diagnosed with rheumatoid arthritis or that he was referred for evaluation or treatment by an orthopedic or neurological specialist. (Tr. at 14.)

With respect to the opinion of the consultative examiner, the ALJ found that the assessment was not supported by adequate objective findings. (Tr. at 14-15.) The ALJ also noted that the examiner's assessment was contradicted by Plaintiff's testimony at the hearing as to his activities. *Id.* Concluding that "the doctor's assessment of [Plaintiff's] functional capacity appears to be based largely upon [Plaintiff's] subjective complaints and reported history," the ALJ did not give significant weight to that assessment. (Tr. at 14-15.) However, full weight was given to the findings on examination. (Tr. at 15.) The ALJ determined that the objective findings were consistent with his RFC determination. *Id.*

The ALJ concluded that Plaintiff's statements concerning his impairments and their impact on his ability to work were not supported by the preponderance of the medical evidence and were not wholly credible. (Tr. at 16.) In particular, the ALJ noted that although Plaintiff alleged disability due to rheumatoid arthritis, the record contained no findings supportive of this claim and that many of Plaintiff's alleged symptoms had not been reported by the consultative examiner or Plaintiff's physicians. *Id.* Indeed, it appeared to the ALJ that many of the symptoms alleged by Plaintiff had not been reported by him to a physician. *Id.* Additionally, the ALJ noted that Plaintiff had not been referred by his physicians for objective laboratory diagnostic testing or evaluation by a specialist. *Id.* Although Plaintiff had sought significant chiropractic treatment, he sought treatment with a physician for his back pain only once. *Id.* For these reasons, the ALJ opined that Plaintiff exaggerated his pain and other symptoms to the extent that he contended he was unable to work. (Tr. at 17.)

Although the state agency reviewing physicians opined that Plaintiff could perform medium work with occasional stooping and crouching, the ALJ found a more restrictive residual functional

capacity ("RFC") due to the long period of time Plaintiff reported symptoms. (Tr. at 17.) The ALJ concluded that Plaintiff retained the RFC to sit, stand, and walk with no significant limitation; to lift and/or carry thirty pounds occasionally and fifteen pounds frequently; to stoop, crouch, and kneel occasionally. *Id.* Finding that Plaintiff's past work as an automobile salesperson did not require performance of work activities precluded by his medically determinable impairments, the ALJ concluded that Plaintiff could return to his past work as generally performed in the economy. *Id.* Accordingly, the ALJ found that Plaintiff was not entitled to receive disability benefits. *Id.*

## II.   ANALYSIS

### A.   *Legal Standards*

#### 1.   *Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

*2.     Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### B.   *Issues for Review*

Plaintiff alleges that substantial evidence does not support the Commissioner's finding that he was not disabled because:

(1)   The ALJ erred in failing to give significant weight to the consultative examiner's opinion as to Plaintiff's functional capacity; and

(2)   The ALJ erred in failing to contact the consultative examiner to seek clarification of her opinion.

### C.   *Issue One: Weight Given to Consultative Examiner's Opinion*

Plaintiff asserts that the ALJ erred in failing to give significant weight to the consultative examiner's opinion regarding his functional capacity. (Pl.'s Br. at 8-9.) At issue is Dr. Dembo-Smeaton statement that

> [Plaintiff] is limited in his ability to work. He cannot move about, drive a car, lift, carry or handle objects, and he cannot do fine movements with his hands because of the pain and stiffness. [Plaintiff] can sit and stand only for a limited time, about 30 minutes. [Plaintiff's] limitation of physical activity is related to his symptoms, as described in history and physical.

(Tr. at 126.) Plaintiff claims the ALJ's rationale for discounting Dr. Dembo-Smeaton's opinion was insufficient, and that due to such error, substantial evidence does not support the ALJ's RFC

-9-

determination. (Pl.'s Br. at 8-9.)

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," they must consider such findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). An ALJ may not ignore the opinions of State agency medical consultants and must explain the weight given those opinions in their decisions. SSR 96-6p. However, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citations omitted). For good cause, less weight, little weight, or even no weight may be given to a physician's opinion. *Id*. Good cause includes disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Id.*

The ALJ found that the opinion Dr. Dembo-Smeaton was not supported by adequate objective findings. (Tr. at 14.) With regard to Plaintiff's back pain, the ALJ noted that

> [n]otwithstanding subjective findings of some limitation of motion of the lumbar spine and positive straight leg raising, there are insufficient objective laboratory diagnostic findings to establish a significant impairment of the lumbar spine. Moreover, neurological examination was relatively benign, with deep tendon reflexes only slightly diminished at +1 in all extremities and with no evidence of muscle atrophy, as well as muscle strength being equal bilaterally and 5/5 in all extremities. Rhomberg's test was negative, and rapid alternating movements were coordinated and good. Sensation to pain, touch and 2-point discrimination was intact, and gait was coordinated, although the tandem gait purportedly was difficult for [Plaintiff] to perform. . . . [Plaintiff's] purported difficulty with tandem gait (walking with one foot directly in front of the other, was not adequately explained. . . .

(Tr. at 15.) The ALJ found that the objective findings were consistent with the ability to sit, stand, and walk as required, and the ability to lift and/or carry thirty pounds occasionally and fifteen pounds frequently. *Id.*

In discussing Plaintiff's ability to perform fine movements with his hands, the ALJ noted that although Dr. Dembo-Smeaton stated that this ability was impaired due to pain and stiffness, her report contained no examples of such limitations:

> His purported inability to do fine movements with his hands is not demonstrated by examples of any fine movements that he is unable to perform, such as picking up coins, buttoning clothing and the like. No significant limitation of fine manipulation was reported by any of [Plaintiff's] treating physicians.

(Tr. at 14.) Although Dr. Dembo-Smeaton stated that Plaintiff could not drive, the ALJ noted that Plaintiff testified at the hearing that he did drive regularly, although not for long distances. *Id.*

In discussing Plaintiff's claim of rheumatoid arthritis, the ALJ noted that

> There are no objective clinical or laboratory diagnostic findings to support [Plaintiff's] reported history of rheumatoid arthritis. In fact, other than [Plaintiff's] subjective complaints of pain and stiffness and some prescription of anti-inflammatory medication often used for arthritic symptoms, there is little significant evidence of joint problems in any extremities. [Plaintiff] reported episodes of joint swelling, predominantly in his wrists, elbows and hands, accompanied by low-grade fever. None of these symptoms was reported by the consultative examiner to be present. None of these symptoms was reported by any of [Plaintiff's] treating physicians either.

(Tr. at 16.)

Substantial evidence supports the ALJ's decision to disregard Dr. Dembo-Smeaton's conclusions as to Plaintiff's limitations. Her report acknowledged that it was based in part on Plaintiff's characterization of his medical history. (Tr. at 126.) In fact, her stated assessment of Plaintiff's limitations with regard to movement, driving, lifting, and handling is nearly identical to Plaintiff's reported limitations, as set forth in the history section of the report. *Id.* The ALJ provided an exhaustively-detailed explanation of the ways in which Dr. Dembo-Smeaton's opinion regarding Plaintiff's limitations was not supported by substantial evidence and the reasons for not affording her opinion significant weight. In so doing, the ALJ demonstrated good cause for

affording no weight to that part of Dr. Dembo-Smeaton's opinion.

### D.     *Issue Two: Clarification of Consultative Examiner's Opinion*

Plaintiff claims the ALJ erred failing to contact Dr. Dembo-Smeaton to seek clarification of her opinion. (Pl.'s Br. at 9-10.) In particular, Plaintiff points to the ALJ's statement that "the Administrative Law Judge does not give significant weight to the vague assessment of [Plaintiff's] functional capacity, although full weight has been given to the findings on examination of the consultative examination. . . ." and asserts that this indicates that the ALJ found Dr. Dembo-Smeaton's report to be inadequate, requiring clarification. *Id*.

Pursuant to 20 CFR § 404.1519p, the ALJ is to review the report of the consultative examiner to determine whether the specific information requested was furnished. 20 CFR § 404.1519p(a). If the report is found to be inadequate or incomplete, the ALJ is to contact the consultative examiner to ask that the missing information be provided or a revised report prepared. 20 C.F.R. § 404.1519p(b). Contrary to Plaintiff's assertion, it does not appear that the ALJ found Dr. Dembo-Smeaton's report to be inadequate. In fact, the ALJ relied heavily on the objective findings in that report in determining Plaintiff's RFC. The only area which the ALJ found Dr. Dembo-Smeaton's report to be vague was the assessment of Plaintiff's functional capacity. This an area reserved for the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (noting that the ALJ alone is responsible for determining a plaintiff's RFC). Because she did not find the objective findings in the consultative examiner's report to be inadequate, the ALJ was not required to request a revised report.

Additionally, while a medical source statement describing the types of work that the applicant is still capable of performing is commonly utilized in determining a claimant's RFC, the

12

absence of such a statement, does not, in itself, make the record incomplete." *Ripley*, 67 F.3d at 557. Therefore, it follows that the failure to afford substantial weight to such opinion is not necessarily error. Even assuming, *arguendo*, that the ALJ should have contacted Dr. Dembo-Smeaton and requested clarification, if substantial evidence in the record supports the ALJ's determination of Plaintiff's RFC, there is no error. *See Gutierrez v. Barnhart*, 2005 WL 1994289, *7 (5th Cir. Aug. 19, 2005). The courts will not reverse a case due to an ALJ's failure to fully develop the record absent a demonstration of prejudice. *Gutierrez*, 2005 WL 19994289 at *8. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

The Court finds that substantial evidence in the record supports the ALJ's RFC determination. In particular, the Court notes the objective findings of Dr. Dembo-Smeaton, the absence of other objective findings in the record supporting Plaintiff's subjective complaints, and the fact that the record does not reflect persistent attempts by Plaintiff to find relief for his symptoms. In addition, Plaintiff has failed to show that any such error prejudiced him in any way. Accordingly, any error provides no basis for reversal.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled for purposes of the Social Security Act. Accordingly, the final decision of the Commissioner is wholly **AFFIRMED**.

**SO ORDERED**, on this 13th day of December, 2005.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE